IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **YAMANGO JILES, SR.,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| V. | ) | Civil No.  **00-806-WDS** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner Yamango Jiles was convicted in 1997 of conspiracy to distribute and to possess with intent to distribute cocaine base ("crack"), and was sentenced to 282 months imprisonment. ***U.S. v. Jiles***, **No. 96-30087-10-WDS (S.D.Ill., Doc. 482, Oct. 7, 1997).**  On direct appeal, his conviction was affirmed. ***Id.* (Doc. 508, Mar. 9, 1999)**. Petitioner filed the subject petition for writ of habeas corpus, pursuant to 28 U.S.C. § 225, in October 2000.  **(Doc. 1).**  The petition was denied, but on appeal the Court of Appeals for the Seventh Circuit remanded the matter for a hearing and reconsideration of whether Jiles was denied effective assistance of trial counsel, in violation of the Sixth Amendment.  **(Doc. 16 (*Jiles v. U.S.*, No. 02-2340 (7ᵗʰ Cir. Aug. 18, 2003)).**  In accordance with 28 U.S.C. §§ 636(b)(1)(B) and (C), the District Court referred the matter for an evidentiary hearing and report and recommendation. **(Doc. 17).**

In addition to Jiles' petition and supporting exhibits **(Docs. 1 and 4),** and  the government's response **(Doc. 25)**, an evidentiary hearing was held **(Doc. 38 Transcript of June 25, 2004, Proceedings)**, additional exhibits were accepted into evidence **(Doc. 37-1)**, and Jiles filed a supplemental brief **(Doc. 41)**.

1

**Issues Presented**

Petitioner Jiles was the tenth named defendant in a ten defendant drug conspiracy case. *U.S. v. Harley, et al.*, No. 96-40023-JPG (S.D.Ill. filed Mar. 20, 1996).   The defendants were severed for trial, with six defendants, including Jiles, set for trial before U.S. District Judge William D. Stiehl under case No. 96-30087-WDS.  Five of those six defendants were tried together in late 1996:  Eric Harley, Ray Legg, Emily Legg, Lynn Green, Demetrius Murray. Petitioner Yamango Jiles was "on the run," and was tried approximately six months later.  At trial, Jiles was represented by appointed counsel, attorney John M. Delaney.  Delaney also represented Jiles on direct appeal.  ***Jiles v. U.S.*, No. 97-3540 (7th Cir. docketed Oct. 9, 1997).**

Petitioner Jiles, now proceeding pro se, argues that the following alleged errors, separately or together, denied him effective assistance of trial counsel:

  1.  Counsel failed to inform Jiles of the correct possible sentence if he elected to reject an offered plea bargain, causing Jiles to go to trial and receive a 282 month sentence.

  2.  Counsel failed to adequately investigate and interview witnesses who would have contradicted the government witness Corey Johnson, and exonerated Jiles:

      A.  Co-defendants Ray Legg, David Garnett, Lynn Green and Demetrius Murray would have all purportedly testified that Jiles was not part of conspiracy or drug activity; and

      C.  Jiles's family members.

  3.  Counsel failed to inform Jiles of his right to testify at trial, and counsel misinformed Jiles that testifying would have opened the door to the admission of prejudicial information regarding a pending shooting charge– evidence that would have been inadmissable under Federal Rule of Evidence 609 because the defendant was never convicted of the charge.

  4.  Counsel failed to move for a mistrial or object to the government's claim that Jiles fled to avoid prosecution on the drug charge, when Jiles had fled

2

state prosecution on shooting charge, thereby allowing the jury to infer guilt relative to the drug charge.

5.   Counsel failed to attempt to suppress tape recordings of non-testifying co-defendants Ray Legg and Lynn Green, resulting in Jiles being denied his right to confront witnesses, and permitting the jury to draw an inference of guilt, as the government's closing argument suggested they should.

6.   Counsel failed to object to hearsay testimony from government witness Corey Johnson regarding what co-defendant Ray Legg allegedly told him about Jiles's role in the conspiracy.

### Applicable Legal Standards

Collateral relief under 28 U.S.C. § 2255 "is available only for an error of law that is jurisdictional, constitutional, or constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" ***Carreon v. United States*, 578 F.2d 176, 179 (7th Cir. 1978) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974); *see also* 28 U.S.C. § 2255.**

In accordance with *Strickland v. Washington*, 466 U.S. 668 (1984), in order to establish an ineffective assistance of counsel claim a petitioner must prove that: (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's deficient performance prejudiced the defense.  ***Id.* at 687-688.**  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.* at 694.**  Attorney performance is not assessed in hindsight, but rather from counsel's standpoint, give the totality of the circumstances, and there is a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance.  ***Id.* at 688-689.**  The defendant must affirmatively prove prejudice; a "conceivable effect" on the outcome isn't enough.  ***Id* at 692-**

3

**693.**  By the same token, a defendant does not have to show that the deficient conduct more likely than not altered the outcome.  *Id* **at 693.**

The Court of Appeals for the Seventh Circuit stressed in its opinion that the test on remand is *not* whether the government's evidence was sufficient to support conviction. According to *Strickland*, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  ***Id.* at 695.**   A verdict weakly supported by the record is more likely to have been effected by error than a verdict with overwhelming support in the record**.  *Id.* at 696.**  The Court must perform the necessary calculus to determine whether Jiles has met his burden.

<u>**Analysis**</u>

Each issue raised by petitioner Jiles, and the relevant evidence, will be addressed in turn.

<u>**1.  The Possible Sentencing Range and the Plea Bargain**</u>

Petitioner Jiles asserts that attorney Delaney informed him that the government was offering a two to three year sentence, if he pled guilty.  According to Jiles, Delaney told him that, his potential sentence was 10 years to life imprisonment, if he went to trial and was convicted. Jiles also takes issue with Delaney's alleged failure to inform him that the Sentencing Guidelines would apply and that he could receive a 23 year sentence.  Had Delaney done so, opines Jiles, he would have accepted the plea agreement.  Effective assistance of counsel is required in making such crucial decisions as whether to accept a plea agreement or go to trial. ***Johnson v. Duckworth*, 793 F.2d 898, 900-902 (7th Cir. 1986); *Toro v. Fairman*, 940 F.2d 1065, 1067- 1068 (7th Cir. 1991)**.

4

Jiles did not testify at the evidentiary hearing, but his affidavit generally tracks his allegations.  **(*See* Doc. 4).**   Jiles' colloquy with attorney Delaney during the evidentiary hearing is most telling.  Jiles indicates that he confused or misheard Delaney's reference to a possible two to three year sentence if he were to make a "proffer" to the government with a two to three year "offer."  **(*See* Doc. 38, Transcript of June 25, 2004, Proceedings, pp. 31-32).**  In any event, there is no merit to this issue.  Petitioner's assertions are not supported by any evidence; rather, all relevant evidence in the record refutes his allegations.

First, petitioner's argument is nonsensical.  He admits that Delaney told him he could be sentenced to 10 years to life in prison, yet he argues that had he been told that he could receive a 23 year sentence– a term well within the range described by Delaney– he would have decided not to go to trial.

Second, documentary evidence shows that Delaney properly informed Jiles of his potential sentencing range under the Sentencing Guidelines, versus a greatly reduced sentence if he were to plead guilty and cooperate with the government.  **(Doc. 25, Exhibits 2A and 2B; and Doc. 37-1, Government's Exhibit 4).**  A March 20, 1997, memo from attorney Delaney to petitioner warns that the possible penalty is "10 years to life," and indicates the government had not made an offer, but had mentioned the possible applicability of the "safety valve" provision in Section 5C1.2 of the Sentencing Guidelines (which was incorporated verbatim into the letter).  **(Doc. 25, Exhibit 2A).**  Similarly, a March 27, 2997, memo from Delaney to Jiles repeats the warning that Jiles could be sentenced in the range of 10 years to life, and strongly recommends and urges, based on a summary of the evidence, that Jiles consider a proffer and exploration of a plea agreement which, based on his lack of prior criminal record, could be one-third less than the

5

10 year minimum. **(Doc. 25, Exhibit 2B).** A March 31, 1997, letter from Delaney to Jiles again summarized the evidence, warned him that he was facing at least a 10 year sentence if he went to trial and was convicted, versus a three to seven year plea agreement. On April 1, 1997, Jiles elected, in writing, to proceed to trial, despite the being advised as detailed above.

It is unreasonable to think Jiles would have decided to plead guilty (whether there was a formal offer, or not) if he had been told he could receive a 23 year sentence, when he had elected to go to trial knowing he could receive a life sentence. Therefore, under *Strickland v. Washington* petitioner was not denied effective assistance of counsel.

## 2.  Investigation of Possibly Exculpatory Witnesses

Failure to conduct a reasonable investigation may satisfy the performance prong of the *Strickland* test. ***Wiggins v. Smith*, 539 U.S. 510 (2003); *Harris v. Cotton*, 365 F.3d 552, 556 (7th Cir. 2004).** However, an attorney's choices as to what evidence is presented are strongly presumed to be tactical decisions and therefore, objectively reasonable. ***Harris*, 365 F.3d at 555.**

### A.  Co-defendants

There is no dispute that plaintiff requested that co-defendants Ray Legg, David Garnett, Lynn Green and Demetrius Murry be called to testify at his trial. **(Doc. 38, p. 22).** Plaintiff believed they would each testify he (Jiles) was not part of the charged conspiracy or drug activity. **(Doc. 38, p. 22; and Doc. 4, Affidavit of Jiles, ¶¶ 9 and 11).** At attorney Delaney's request, the Court issued subpoenas for the four aforementioned co-defendants. **(*See* Doc. 1, Exhibit I (Case No. 96-30087-10-WDS, Doc. 439)).** However, the Court had cautioned

6

Delaney to speak with the co-defendants' attorneys to make sure each co-defendant would not assert his Fifth Amendment right not to testify.  **(Doc. 38, pp. 24-25; and Doc. 37-1, Government's Exhibit 1).**  The four co-defendants never testified at trial because, as Delaney explained at the evidentiary hearing, their attorneys indicated that each of them would assert his Fifth Amendment right and would not testify**. (Doc. 38, pp. 22, 25-26; Doc. 37-1, Government's Exhibit 2).**

Plaintiff submits affidavits from co-defendants Ray Legg, Garnett, Green and Murray, each indicating that they were willing to testify at trial that Jiles had no participation in the charged conspiracy, but Jiles' attorney never interviewed them.  **(Doc. 1, Exhibit H).**  Jiles argues that had Delaney  spoken with the co-defendants, Delaney would have learned of their exculpatory testimony and realized that they were indispensable witnesses.  Jiles further argues that his Sixth Amendment right to compulsory process and Fourteenth Amendment right to due process should have trumped any ethical prohibitions against Delaney speaking directly to the co-defendants and subpoenaing them as witnesses.[1]

Attorney Delaney did obtain subpoenas for Ray Legg, Garnett, Green and Murray, which suggests that Delaney was pursuing the defense Jiles desired.   Of course, interviewing the co-defendants to ensure they would testify favorably was reasonable, rather than risk doing severe

---

[1] "During the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law." **ILCS S. Ct. Rules of Prof. Conduct, RPC Rule 4.2 (eff. Aug. 1, 1990).**

7

damage had they inculpated Jiles or asserted their Fifth Amendment right not to testify in front

of the jury.  Delaney was ethically bound to explore the possibility of interviewing and calling

Ray Legg, Garnett, Green and Murray to testify via their respective attorneys.  **ILCS S. Ct.**

**Rules of Prof. Conduct, RPC Rule 4.2 (eff. Aug. 1, 1990).**  Had he interviewed those witnesses

without the permission of their attorneys, he could have lost his license to practice law.

Therefore, Delaney acted in accordance with the law and, therefore, reasonably in that respect.

Assuming that co-defendants Ray Legg, Garnett, Green and Murray would have all

testified that Jiles had no involvement in the charged conspiracy, their testimony would not

necessarily have exonerated Jiles.  As Delaney explained, he recognized and told Jiles that a jury

could reasonably question the veracity of the co-defendants– who had all just been convicted.  In

addition, as outlined in a pretrial memorandum from Delaney to Jiles, after reviewing the

discovery materials in Jiles' case and the evidence presented in his co-defendants' cases, "no less

than 18 of the witnesses" implicated Jiles in the conspiracy, and there was a real possibility that

some of the other nine co-conspirators would testify against Jiles.  **(Doc. 25, Exhibit 2B).**

Therefore, from Delaney's standpoint, given the totality of the circumstances, he acted

reasonably and there is not a reasonable probability that the outcome would have been different.

### B.  Jiles' Family Members

Jiles takes issue with attorney Delaney's decision not to call his mother, Denice Jiles, to

testify at trial.  According to Ms. Jiles' affidavit, had she been called to testify, she would have

stated that her son was not a drug dealer and, had he been selling drugs out of his nightclub, she

would have known because she frequently visited him there.  **(Doc. 4, Affidavit of Denice**

**Jiles).** Ms. Jiles also stated that Delaney had declined her offer to testify because he mistakenly

thought she was a convicted felon, which she says she informed him she was not.  **(Doc. 4, Affidavit of Denice Jiles).**

Regardless of whether Ms. Jiles is a convicted felon, it is not at all unusual, or unreasonable, not to have a defendant's mother testify that she is certain her son or daughter is innocent, and that she would surely know if her child had been up to no good.  Moreover, Ms. Jiles testimony would obviously not carry the day for her son, since she admits she was not with him at all times.  It is not reasonable to think that Jiles' mother's endorsement of her son would outweigh the large amount of evidence against him.  **(*See* Doc. 25, Exhibit 2B (summary of some of the incriminating evidence).**  Therefore, Jiles has not upset the presumption of reasonableness of Delaney's decision not to use Ms. Jiles as a witness.

### 3.  Jiles' Right to Testify

A defendant has the exclusive authority to waive his right to testify.  ***Jones v. Barnes*, 463 U.S. 745, 751 (1983).**  Waiver of that right must be knowing and intelligent.  ***United States v. Manjarrez*, 258 F.3d 618, 623 (7th Cir. 2001).**  Jiles contends that attorney Delaney failed to inform him of his right to testify at trial, and misinformed him that testifying would open the door to the admission of prejudicial information regarding a pending shooting charge– evidence that would have been inadmissible under Federal Rule of Evidence 609 because Jiles was never convicted of the charge.  Jiles' affidavit does not indicate what his testimony would have been.  **(Doc. 4).**  Delaney's affidavit states that he advised Jiles not to testify because he would open himself up to a wide range of cross examination.  **(Doc. 25, Exhibit 2).**  At the evidentiary hearing, Delaney elaborated that he discussed factors weighing against testifying with Jiles, such as Jiles' arrest on the east coast while in possession of a gun and Jiles' prior record, but the final

9

decision was Jiles'.  **(Doc. 35, pp. 27-28).**

Petitioner Jiles correctly notes that Federal Rule of Evidence 609, which permits the admission of evidence of a prior *conviction* to impeach a witness, would not apply to the pending shooting charge.  Nevertheless, Jiles has failed to satisfy the two-pronged *Strickland* test for ineffective assistance of counsel.

Delaney's advice to Jiles not to testify was sound trial strategy.  ***See United States v. Norwood*, 798 F.2d 1094, 1100 (7th Cir. 1986).**  The presumption of reasonableness is undisturbed in this situation because Jiles has not provided an affidavit regarding what his testimony would be.  Merely asserting his innocence would not carry the day, given the amount of inculpatory evidence.  **(*See* Doc. 25, Exhibit 2B (summary of some of the incriminating evidence).**

### 4.  Jiles' Flight from Prosecution

Jiles takes issue with attorney Delaney's failure to move for a mistrial or object to the government's claim that Jiles fled to avoid prosecution on the drug charge, when Jiles insisted he had fled to avoid state prosecution on the shooting charge, thereby allowing the jury to infer guilt relative to the drug charge.  This argument is a nonstarter.

Jiles asserts that he was fleeing from a pending shooting charge, not the drug charge.  As support, Jiles cites a report that Corey Johnson had made a statement indicating that he understood Jiles to be fleeing from the shooting charge.  **(Doc. 1, Exhibit K).**  Even assuming Jiles was not fleeing from the drug charge, the chronology of events was such that there was a basis for the government asking the jury to infer that Jiles was fleeing the drug charge; therefore,

any objection by Delaney would surely not have been sustained.  As Assistant U.S. Attorney Morrisey noted during the evidentiary hearing, Jiles very well could have been fleeing for multiple reasons.  **(Doc. 35, pp. 14-15).**  Jiles has simply not overcome the presumption that Delaney's trial strategy was unreasonable.

### 5.  Tape Recordings of Ray Legg and Lynn Green

Jiles finds it unreasonable that attorney Delaney failed to attempt to suppress tape recordings of non-testifying co-defendants Ray Legg and Lynn Green.  Jiles argues that he was thereby denied his Sixth Amendment right to confront witnesses, and the jury was permitted to draw an inference of guilt, as the government's closing argument suggested they should.  Legg had stated, on tape, that he was selling drugs for an unidentified "MF'er."  **(*See* Doc. 1, Exhibit L).**  From Jiles' perspective, the prejudice culminated when the government asked the jury to infer that the "MF'er" was Jiles, based on other witnesses' statements (Johnson and Sharp) that Jiles was Legg's primary source for drugs and/or partner.  **(*See* Doc. 1, Exhibit L).**

Jiles' argument is fatally flawed, in that Federal Rule of Evidence 801(d)(2)(E) provides an exception to the hearsay rule for statements of a coconspirator during and in furtherance of the conspiracy.  There is no Confrontation Clause violation if the contested statements are admissible under Rule 801(d)(2)(E).  ***See Bourjaily v. United States*, 483 U.S. 971 (1987); and *United States v. Williams*, 737 F.2d 594 (7th Cir. 1984).**  Therefore, this Court cannot fathom what reasonable evidentiary objection Delaney could have made to exclude the statements by Legg and Green.  Based on the proper admission of that evidence, the government had a basis for asking the jury to infer that the "MF'er" Legg referred to was Jiles.

**6.  Corey Johnson's Testimony**

Jiles contends that the testimony of the chief witness against him, Corey Johnson, was inadmissible hearsay, because it was primarily based on what co-defendant Ray Legg had allegedly told Johnson.  Jiles takes issue with attorney Delaney's failure to object to Johnson's hearsay testimony.

As a preliminary matter, this issue is too vague to permit meaningful analysis and should be deemed waived.  Jiles does not provide the Court with excerpts of the testimony at issue, or other specifics of what statements are objectionable.  What Jiles describes could conceivably be double hearsay.  Again, Federal Rule of Evidence 801(d)(2)(E) would appear to provide a hearsay exemption because Ray Legg was a co-conspirator and Corey Johnson was a co-defendant[2].  ***See United States v. Gironda*, 758 F.2d 1201, 1217-1219 (7th Cir. 1985) (both layers of double hearsay covered by Fed.R.Evid. 801(d)(2)(E)).**  Accordingly, attorney Delaney's failure to object does not appear unreasonable.

## Recommendation

For the aforestated reasons, it is the **RECOMMENDATION** of this Court that Yamango Jiles' petition for writ of Habeas corpus pursuant to 28 U.S.C. § 2255 be denied in all respects, as he has failed to prove a single instance of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

## Response Period

---

[2]  **S*ee* Case Nos. 96-30087-4-WDS; and 96-40023-4-JPG.**

In accordance with 28 U.S.C. § 636(b)(1)(C), the parties have until **July 10, 2005**, to file written objections to this report and recommendation, which includes three days for the "mailbox" rule.

**DATED: June 22, 2005**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**